[L. A. No. 4390. In Bank.—July 28, 1916.]

In the Matter of the Estate of JOHN DARLING, Deceased. WILLIAM BOOSEY, as Guardian, etc., Appellant, v. DAVID DARLING et al., Respondents.

ESTATES OF DECEASED PERSONS — SUCCESSION TO ESTATE OF GRAND-PARENT BY BLOOD—RIGHT OF ADOPTED CHILD.—Under subdivision 1 of section 1386 of the Civil Code, an adopted child is entitled to succeed to the share in the estate of the father of his father by blood, that such father by blood would have succeeded to had he survived his own father.

ID. — ADOPTION — EFFECT UPON RIGHT OF INHERITANCE — MATTER OF STATUTORY REGULATION.—The rights of inheritance of an adopted child are affected by the adoption only in so far as the statutes expressly or by necessary implication affect them, and the mere establishment of the relation of parent and child between the adopting parent and the child, with all its consequent right and duties, affects only the relative rights of inheritance of the parties to the contract, the parents by blood, the adopting parents, and the child, and has no effect at all as to the rights of the child in so far as the ancestor or collateral kindred of its parents by blood are concerned.

ID.—SCOPE OF STATUTES IN THIS STATE.—The adoption statutes of this state do not purport to affect the relationship of any person other than that of the parents by blood, the adopting parents, and the child.

APPEAL from a decree of the Superior Court of Ventura County distributing the estate of a deceased person. Merle J. Rogers, Judge.

The facts are stated in the opinion of the court.

Robert M. Clarke, for Appellant.

Chas. F. Blackstock, for Respondents.

ANGELLOTTI, C. J.—This is an appeal from a decree of distribution by the guardian of one Arnold Darling Bennison, a minor, sometimes known as Arnold Darling. The appeal really presents but one question, and there is no controversy as to the facts.

Deceased died February 11, 1914. He did not provide in his will for the disposition of his property. He left surviving him two sons and a daughter. Another son, John Darling, Jr., died prior to the death of deceased. Arnold Darling Bennison is the issue of the marriage of said John Darling, Jr., and Carrie Arnold Darling (who died February 12, 1900), born November 23, 1897. On August 29, 1903, he was regularly adopted in accord with the laws of this state by H. G. Bennison and Eda Bennison, his wife, the order of the judge of the superior court declaring that he shall henceforth be regarded and treated in all respects as their child, and shall henceforth bear the name of Arnold Darling Bennison. Both H. G. Bennison and Eda Bennison still survive. The minor claims upon these facts that he succeeded upon the death of deceased to one-fourth of his estate. The lower court concluded that this claim was unfounded, and distributed the estate in equal shares to the three surviving children of deceased.

The question then is, Does an adopted child succeed to the share in the estate of the father of his father by blood, that such father by blood would have succeeded to had he survived his father?

Our law of succession applicable here is that portion of subdivision 1 of section 1386 of the Civil Code, reading as follows: "If the decedent leaves no surviving husband or wife, but leaves *issue*, the whole estate goes to such *issue;* and if such *issue* consists of more than one child living, or one child living and the *lawful issue* of one or more deceased children, then the estate goes in equal shares to the children living, or to the child living and the *issue of the deceased child or children by right of representation.*" (The italics are ours.) The theory of the respondents, the surviving children of deceased, is that, by reason of the adoption of the

minor by the Bennisons, he was thenceforth not "issue of the deceased child" Arnold Darling, Jr., within the meaning of that term as used in the provision quoted, and therefore not entitled to share in his grandfather's estate as the representative of his deceased natural father. If he is to be regarded as being at the date of the death of deceased "issue of the deceased child" within the meaning of that term as so used, it is clear that he succeeded to one-fourth of the estate of deceased.

It is to be borne in mind that in this state both the right of inheritance and the subject of adoption with the rights and obligations springing therefrom are purely matters of statutory regulation. (See *Estate of Jobson*, 164 Cal. 312, [43 L. R. A. (N. S.) 1062, 128 Pac. 938].) It appears to be well settled in all jurisdictions where the common law constitutes the rule of decision, that the right of inheritance of a child is affected by its adoption only to the extent that the statutes bearing on the matter in terms or by implication provide. There is no provision in any of our statutes of succession or those relating to adoption that in terms refers to the matter of inheritance. Our adoption statutes substantially provide simply that an order shall be made "declaring that the child shall thenceforth be regarded and treated in all respects as the child of the person adopting"; that after adoption the child and the person adopting "shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation"; and that "the parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the child so adopted, and have no right over it." But it is settled that the necessary effect of these provisions is to establish as between the adopting parent and the adopted child the legal relation of parent and child, with all the incidents and consequences of that relation, including the right of the child to inherit as a child from the adopting parent (*Estate of Newman*, 75 Cal. 213, [7 Am. St. Rep. 146, 16 Pac. 887]), and the right of the adopting parent to inherit as a father from the adopted child. (*Estate of Jobson*, 164 Cal. 312, [43 L. R. A. (N. S.) 1062, 128 Pac. 938].) The adopting parent is by the adoption substituted for the parent by blood, with all of its logical results, that is in so far as the parents by

blood, the adopting parents, and the adopted child are concerned. As between these parties the child is thenceforth, in a legal sense, the child of the adopting parents; and, as said in *Estate of Jobson, supra,* the adopting parent is thenceforth, so far as concerns all legal rights and duties flowing from the relation of parent and child, the parent of the adopted child, while the parent by blood ceases to be in a legal sense the parent, his place being taken by the adopting parent. Such being the *status* of the adopted child, it necessarily follows, as held in *Younger* v. *Younger,* 106 Cal. 377, [39 Pac. 779], that the jurisdiction of a court in a divorce action between the parents by blood to give such direction for the custody, care, and education "of the children of the marriage" as may seem necessary or proper (Civ. Code sec. 138,) cannot exist as to any such child after its adoption by another. It was substantially said in the case just cited that the various provisions of the code are to be construed in harmony, and so as to give all their appropriate and intended effect, and that section 138 of the Civil Code must be considered in connection with the statutes relative to adoption, with the result that a child of the marriage adopted by another could no longer be considered a child of the marriage within the meaning of said section. Of course the only relation here involved was that between the parents by blood, the parents by adoption, and the adopted child. It also necessarily follows that the adopted child must inherit just as a child by blood *from the adopting parents,* for otherwise it would not have all the rights of the legal relation of parent and child, as the adoption statute provides it shall have. Accordingly it was held in *Estate of Newman,* 75 Cal. 213, [7 Am. St. Rep. 146, 16 Pac. 887], that, construing subdivision 1 of section 1386 of the Civil Code, in harmony with the adoption statute, the word "issue" therein "does not limit the right of inheritance to the natural children only," but was there used in the same sense as the word "child" or "children," and included an adopted child of the deceased to whose estate succession was claimed by such adopted child. Here the only relation involved was that between the person adopting and the adopted child. It also necessarily follows that the adopting parents must inherit from the adopted child, to the exclusion of the parents by blood, and that on the question of succession to the estate of

an adopted child, section 1386 of the Civil Code, construed in harmony with the adoption statutes when speaking of "father" or "mother," means the father or mother by adoption. Such was the ruling in *Estate of Jobson*, 164 Cal. 312, [43 L. R. A. (N. S.) 1062, 128 Pac. 938]. Again, it is to be observed that the only relation involved was that between the parents by blood, the persons adopting, and the adopted child. The court took occasion to say: "It should perhaps be added that the case before us presents no question of the effect of adoption upon the rights of any persons except the natural parents, the child, and the adopting parent *inter sese*. There is no occasion to express any opinion, and we express none, upon the existence of rights that might be claimed collaterally by either party to the adoption; that is to say, as against the natural kin of the other." One other consequence in the matter of inheritance may be noted as arising from the same relation, viz., that the children of the *adopted child* take by inheritance *from the adopting parent* as issue of such adopting parent. This was practically the question decided in *Estate of Winchester*, 140 Cal. 468, [74 Pac. 10]. (See, also, *Power* v. *Hafley*, 85 Ky. 671, [4 S. W. 683]; *Atchison* v. *Atchison's Exr.*, 89 Ky. 488, [12 S. W. 942]; *Gray* v. *Holmes*, 57 Kan. 220, [33 L. R. A. 207, 45 Pac. 596]; *Pace* v. *Klink*, 51 Ga. 221.) Here again it is to be observed that really the only relation involved is that of the adopting parent and the adopted child. If, as was observed in the Winchester case, the two "sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, it must follow that the children of an adopted child take by inheritance (from the adopting father) as issue of the adopting father." And section 1386 of the Civil Code, when construed in harmony with the adoption statutes, must be construed as so providing.

The adoption statutes of this state do not purport to affect the relationship of any person other than that of the parents by blood, the adopting parents, and the child. It is the person adopting and the child who, by the express terms of the section, after adoption "shall sustain towards each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation," and it is the parents by blood who, from the time of the adoption,

are "relieved of all parental duties towards, and all responsibilities for the child so adopted, and have no right over it," and are, in the eyes of the law, no longer its parents. The adoption simply fixes the *status* of the child as to its former and adopted parents. To its grandparents by blood it continues to be a grandchild, and the child of its parents by blood. It does not acquire new grandparents in the persons of the father and mother of an adopting parent.

It is only in so far as it is necessary to protect the full rights of the child as a child of the adopting parents and the corresponding rights of the adopting parents as father and mother of the adopted child that the statutes relative to adoption can play any part in the construction of section 1386 of the Civil Code, the inheritance statute here involved. As was said in *Hockaday* v. *Lynn*, 200 Mo. 456, [118 Am. St. Rep. 672, 9 Ann. Cas. 775, 8 L. R. A. (N. S.) 117, 98 S. W. 585] : "In fact, it may be laid down as a general conclusion that while the statute of adoption must be read into the statute of dower and that of descents and distribution, it is with this singularity always to be observed, viz., that the adopted child is so let in only for the purpose of preserving in full its right of inheritance from its adoptive parent."

This was followed by the statement "and the door to inheritance is shut and its bolt shot at that precise point," a statement which appears to be sustained by the authorities generally in the absence of plain statutory provision to the contrary.

The result would appear to be that within the meaning of subdivision 1 of section 1386 of the Civil Code, Arnold Darling Bennison was, at the date of the death of deceased, so far as deceased himself was concerned, "issue" or a "child" of his deceased child, John Darling, Jr., and entitled to succeed as such to the share his father would have taken if alive, by right of representation.

So far as we have been able to find, there is no decision given under statutes anything like ours to the effect that the adopted child has any right of inheritance as to the ancestors or collateral kindred of the adopting parents, or is deprived by the adoption of any right of inheritance that he had as to the ancestor and collateral kindred of his parents by blood. In 1 Corpus Juris, 1401, it is said: "In a few states the statutes expressly provide that an adopted child may inherit

from certain relatives of the adoptive parent. In the absence, however, of such special provision, an adopted child cannot inherit from the collateral kindred of its adopted parent, nor from the ancestor of such parent, nor from his natural children.'' In *Merritt* v. *Morton,* 143 Ky. 133, [33 L. R. A. (N. S.) 139, 136 S. W. 133], the statute provided that the child shall become the heir at law of such person so adopting him or her, and be as capable of inheriting as though he or she was the child of such person, and it was held that the adopted child could not inherit from his adopting mother's mother. In *Sunderland Estate,* 60 Iowa, 732, [13 N. W. 655], it was held that the child could not inherit from the father of her deceased adopting father, for she was not by the adoption made the heir of such father's father, or given any right of inheritance by right of representation. In *Phillips* v. *McConica,* 59 Ohio St. 1, [69 Am. St. Rep. 753, 51 N. E. 445], it was held that the statute enables the adopted child to inherit from the adopting person, but not through him. In *Van Derlyn* v. *Mack,* 137 Mich. 146, [109 Am. St. Rep. 669, 4 Ann. Cas. 879, 66 L. R. A. 437, 100 N. W. 278], *Moore* v. *Moore's Estate,* 35 Vt. 90, and *Hockaday* v. *Lynn,* 200 Mo. 456, [118 Am. St. Rep. 672, 9 Ann. Cas. 675, 8 L. R. A. (N. S.) 117, 98 S. W. 585], the right of the adopted child to inherit from the brother of the deceased adopting parent was denied, while in *Holmes* v. *Elliott,* 89 Tenn. 448, [10 L. R. A. 535, 14 S. W. 930], and *Keegan* v. *Geraghty,* 101 Ill. 26, it was held that the adopted child could not inherit from the other children of the adopting parent. No case has been cited or found by us that is opposed to any of these decisions where the statutes applicable were in all material respects similar to our own statutes. They all rest upon the doctrine that the rights of inheritance of the adopted child are affected by the adoption only in so far as the statutes expressly or by necessary implication affect them, and that the mere establishment of the relation of parent and child between the adopting parent and the child, with all its consequent rights and duties, affects only the relative rights of inheritance of the parties to the contract, the parents by blood, the adopting parents, and the child, and has no effect at all as to the rights of the child in so far as the ancestor or collateral kindred of its parents by blood are concerned. It is stated in the note to *Hockaday* v. *Lynn,*

*supra,* 118 Am. St. Rep. 672, 686, that the adoption of a child does not deprive him of his right to inherit from his relatives by blood, unless the statute provides otherwise, and clearly this must be so.    Our statute does in effect provide, as we have seen, that he can no longer inherit from his parents by blood, because so far as *they* are concerned he is no longer their child.    But his relationship to his grandparents by blood on either side is not affected by the adoption.    *As to them* he is, notwithstanding the adoption, the "issue" or child of their child within the meaning of section 1386 of the Civil Code.

In view of what we have said it is apparent that the minor child of John Darling, Jr., succeeded, by right of representation, to the share in the estate of deceased that said John Darling, Jr., would have succeeded to had he been living at the death of deceased.

The decree of distribution is reversed with directions to the trial court to enter a decree in accord with the views herein expressed.

Shaw, J., Melvin, J., Sloss, J., Henshaw, J., and Lawlor, J., concurred.