260 P.2d 391 (1953)
In re KAY'S ESTATE.
ROBSON, et al.,
v.
STOLTZ, et al.,
No. 9248.
Supreme Court of Montana.
Submitted May 27, 1953.
Decided July 16, 1953.
E.W. Popham, Glendive, Desmond J. O'Neil, Glendive, argued orally, for appellant.
D.C. Warren, Glendive, argued orally, for respondents.
ADAIR, Chief Justice.
The principal question presented is whether, under the laws of Montana, a child by virtue of his adoption loses his right to inherit from his natural parent.
The Facts. Harry B. Kay took a wife and her name was Mildred Rowe Kay. And he knew her and she conceived and bare him two sons who were named Harry Hillis Kay and Phillip Rowe Kay.
The marriage of Harry B. Kay and Mildred Rowe Kay endured for some ten years when, at the suit of the wife, the marriage was dissolved by decree entered in the district *392 court of Dawson County, of which county the parties were then residents. The decree so entered granted Mildred Rowe Kay an absolute divorce from Harry B. Kay and awarded her the custody of the two sons so born of the marriage.
Some eighteen months after the granting of such divorce, Mildred Rowe Kay and one George A. Stoltz intermarried at Valier, Montana. Following this marriage Mildred and her two sons so born of her marriage to Harry B. Kay went to reside and make their home with Stoltz in Pondera County, Montana.
Later, on petition of George A. Stoltz, the district court of Pondera County entered an order whereby both Kay boys were legally adopted by Stoltz and, in accordance with such order, the names of the minors were changed so that Harry Hillis Kay became Hillis George Stoltz and Phillip Rowe Kay became Phillip Rowe Stoltz. Since their adoption both boys have been known by their adopted names and they have resided with and been supported by George A. Stoltz.
On June 18, 1946, Harry B. Kay, in the presence of two subscribing witnesses, signed an instrument in writing declared by him to be his last will, by the terms whereof he devised and bequeathed all his estate of every kind and nature to his brother, W.E. Kay, a bachelor, whom he nominated and designated as executor of the will without bond. No intention appears to substitute any other in the place of W.E. Kay, either as legatee, devisee, executor or otherwise. In fact the will fails to name, designate, mention or refer to any person, persons or class of persons other than the testator and the latter's brother W.E. Kay.
On May 5, 1949, W.E. Kay, so named as sole legatee and devisee in the above will, died testate at Wessington Springs, in the State of South Dakota, leaving no surviving wife, lineal descendants, father or mother. W.E. Kay had lived and he died a single man.
Harry B. Kay, who never remarried, died on January 28, 1951, leaving estate, both real and personal, in Dawson County, Montana, of which county he was then a resident.
On March 6, 1951, by order entered in the district court of Dawson County, the aforesaid testamentary writing of June 18, 1946, was admitted to probate as the last will of Harry B. Kay, deceased, and the appellant J.W. Robson, a nephew of decedent, was appointed administrator with the will annexed, following which he qualified, administered the estate, filed his final account and petitioned for distribution requesting that the estate be distributed to decedent's surviving sisters, brother and to various nephews and nieces as surviving children of a deceased half-sister of the decedent.
To the petition for distribution the respondents Hillis George Stoltz and Phillip Rowe Stoltz filed written objections wherein they represent that they are the natural sons of said Harry B. Kay, deceased; that they are decedent's only surviving heirs at law and that as such they are entitled to have the estate so left by their natural father distributed to them in equal shares.
The appellant J.W. Robson, administrator with the will annexed made reply to respondents' aforesaid objections wherein he admits that respondents are the natural sons of Harry B. Kay and Mildred Rowe Kay but denies that respondents are the legal heirs of said Harry B. Kay, deceased.
Under the laws of Montana, who are the legal heirs of Harry B. Kay, deceased, to whom his estate must be distributed.
The two respondents claim to be decedent's only legal heirs by virtue of being his natural sons born in lawful wedlock and being decedent's only surviving bodily issue, hence entitled to inherit the estate in equal shares under the express provisions of the last sentence of subdivision 1, section 91-403, Revised Codes of Montana of 1947.
The appellants concede that respondents are the natural sons of decedent born in lawful wedlock but contend that by virtue of their adoption by Stoltz each respondent lost his right to inherit from his natural father Harry B. Kay and that the latter's estate, which would have gone to respondents *393 but for their adoption, should be distributed as follows: (1) To Pearl Landers, sister of decedent, of Burbank, California, 1/5 thereof; (2) to Grace Larson, sister of decedent, of Wessington Springs, South Dakota, 1/5 thereof; (3) to Leta Haakinson, sister of decedent, of Madison, South Dakota, 1/5 thereof; (4) to Charlie R. Kay, brother of decedent, of Spencer, South Dakota, 1/5 thereof; (5) to J.W. Robson, nephew, of Lindsay, Montana, 1/35 thereof; (6) to E.J. Robson, nephew of Madison, South Dakota, 1/35 thereof; (7) to Edward Robson, nephew, of Madison, South Dakota, 1/35 thereof; (8) to Glen Robson, nephew, of Madison, South Dakota, 1/35 thereof; (9) to Inez Gavin, niece, of Lindsay, Montana, 1/35 thereof; (10) to Bessie Ducommun, niece, of Junius, South Dakota, 1/35 thereof, and subject to probate proceedings in the matter of the estate of C.L. Robson, also known as Clarence L. Robson, deceased, now pending in the above entitled court; (11) to Harriet Robson of Glendive, Montana, 1/35 thereof for the term of her natural life and the remainder to (12) Vern Robson, of Seattle, Washington; (13) Orvin Robson of Glendive, Montana and (14) Delbert Robson of Glendive, Montana, in equal shares.
After a hearing before it, the district court of Dawson County made and entered its order and decree wherein it approved the administrator's final account and ordered and adjudged that the entire estate of Harry B. Kay, deceased, be distributed to the respondents Hillis George Stoltz and Phillip Rowe Stoltz in equal shares, they being the surviving issue of decedent. The authority for such distribution is subdivision 1, section 91-403, Revised Codes of Montana of 1947.
From the above order and decree J.W. Robson, administrator with the will annexed, has appealed for and on behalf of himself as such administrator and in behalf of himself individually and the brothers, sisters, nieces and nephews named in his petition for distribution.
Testamentary Disposition to W.E. Kay fails. W.E. Kay, sole legatee and devisee in the last will of his brother Harry B. Kay, having died during the lifetime of Harry B. Kay whom he predeceased by almost eighteen months and no intention appearing to substitute any other in the place of said W.E. Kay, the testamentary disposition to him fails under the provisions of R.C.M. 1947, secs. 91-227 and 91-139, infra.
R.C.M. 1947, sec. 91-227 provides: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place, except as provided in section 91-139."
R.C.M. 1947, sec. 91-139 provides: "When any estate is devised or bequeathed to any child, or other relation of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will, in the same manner as the devisee or legatee would have done had he survived the testator."
Testator Omitted to Provide for His Sons. In his last will, the testator, Harry B. Kay, wholly failed and omitted to make any provision whatever for either of his sons or to name, mention or refer to either or to indicate in any manner that such omissions were intentional.
Under such facts and circumstances each respondent as a child of the testator Harry B. Kay, "succeeds to the same portion of the testator's real and personal property that he would have succeeded to if the testator had died intestate." R.C.M. 1947, sec. 91-135.
R.C.M. 1947, sec. 91-136 provides: "Children or issue of children of testator unprovided for by his will. When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child or the issue of such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in the preceding section." Emphasis supplied.
Father Died Intestate as to His Sons. While Harry B. Kay left no surviving wife, he did leave two surviving sons. As to these sons, the father died intestate by *394 reason of his failure and omission to name or provide for them in his will. R.C.M. 1947, secs. 91-135 and 91-136; In re Roderick's Estate, 158 Wash. 377, 291 Pac. 325, 327, 80 A.L.R. 1398. Compare In re Benolken's Estate, 122 Mont. 425, 205 P.2d 1141.
Distribution to Issue in Equal Shares. Having died leaving estate but "without disposing of the estate by will, it is succeeded to and must be distributed" in the manner specifically prescribed in the last sentence of subdivision 1 of section 91-403 of the Revised Codes of Montana of 1947 "unless otherwise expressly provided by the laws of Montana." Section 91-403, supra.
R.C.M. 1947, sec. 91-403, subd. 1, so far as is here pertinent, reads: "Succession to and distribution of estates. When any person having title to any estate not limited by marriage contract dies without disposing of the estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided by the laws of Montana, subject to the payment of his debts, in the following manner: 1. * * * If the decedent leaves no surviving husband or wife, but leaves issue, the whole estate goes to such issue; and if such issue consists of more than one (1) child living * * * then the estate goes in equal shares to the children living * * *." Emphasis supplied.
The above statute, sec. 91-403, subd. 1, says that when the intestate leaves no surviving wife "but leaves issue, the whole estate goes to such issue * * * in equal shares."
The word "issue" comes from the old French issue, eissue, [3] meaning to go out.
The verb "issue" means: "1. To go, pass, or flow out; to run out, as from any enclosed place. 2. To come forth or out; to sally forth; to emerge. 3. To proceed as progeny; to be descended.
"`Of thy sons that shall issue from thee.' 2 Kings XX, 18." Webster's Unabridged New International Dictionary 2nd ed.
The same authority defines the noun "issue" as "1. A going, passing or flowing out; egress, exit, as, the issue of water from a pipe, of people from a house; 2. A means or place of issue; an exit, outlet, or vent. * * * 6. Progeny; a child or children; offspring. In law, sometimes, all persons descended from a common ancestor; also, any one of such persons; as to die without issue."
"Issue" has been held to be synonymous with, or equivalent to "offspring." Barber v. Pittsburgh, Ft. W. & C.R. Co., 166 U.S. 83, 17 S.Ct. 488, 41 L.Ed. 925.
In In Re Howlett's Estate, 1951, 366 Pa. 293, 77 A. (2d) 390, 392, 393, the court said:
"`Issue' means issue of the body, offspring, progeny, natural children, physically born or begotten by the person named as parent. [Citing cases.] An adopted child is issue of his natural parents and not of his adopted ones. [Citing cases.] * * *
"To the layman as well as to the lawyer `issue' has meant actual physical offspring as distinguished from `children' which may mean natural, adopted, foster or stepchildren. * * *
"`Descendants' and `issue' are synonymous. [Citing cases.]"
"Unless otherwise expressly provided." "Unless otherwise expressly provided by the laws of Montana," section 91-403, the whole estate left by Harry B. Kay, deceased, goes to the respondents in equal shares, they being decedent's only living issue. R.C.M. 1947, sec. 91-403, subd. 1.
"The laws of Montana." The word "law" is defined by the Codes of Montana as a solemn expression of the supreme power of the state, section 12-101, which is expressed by the Constitution and by statutes, section 12-102, which are altogether written, section 93-1001-9. Nowhere in "the laws of Montana," as thus defined by our codes, is it "otherwise expressly provided" hence decedent's estate is succeeded to and must be distributed to decedent's issue as required by section 91-403, subd. 1, supra.
Appellants admittedly were and are unable to find any provision of Montana's Constitution or statutes that expressly provides that because of their adoption by another, the bodily issue of a natural father may not inherit their father's estate.
*395 The general rule is as stated in 1 Am. Jur., Adoption of Children, sec. 57, p. 656, viz: "From or through Natural Parents.  Consanguinity is so fundamental in Statutes of Descent and Distribution that it may only be ignored by construction when courts are forced so to do, either by the express terms of the statute or by inexorable implication. An adopted child is, in a legal sense, the child both of its natural and of its adopting parents, and is not, because of the adoption, deprived of its right of inheritance from its natural parents, unless the statute expressly so provides."
In 2 C.J.S., Adoption of Children, sec. 63, subd. c, p. 454, [4] notes 47-50, it is said: "In the absence of a statute to the contrary, although the child inherits from the adoptive parent, he still inherits from or through his blood relatives, or his natural parents. In view of the tendency of the courts to construe adoption statutes so as to benefit the child, as pointed out above in section 6 of this Title, and also, in view of the fact that a statute severing the relation between parent and child is in derogation of common law and should for that reason be strictly construed, it has been held that an adoption statute providing that the natural parents shall be divested of all legal rights and obligations with respect to such child should not be construed so as to deprive the child of its right to inherit from or through its natural parents. Under such a statute it cannot be assumed that the adopted child cannot inherit from its natural parent unless there is an express legislative declaration to that effect."
In Baker v. Clowser, 158 Iowa 156, 138 N.W. 837, 839, 43 L.R.A., N.S., 1056, the court said that in examining the decisions in other states construing similar statutes regulating inheritance and adoption, "we find the weight of authority to be to this effect: That the general statutes of inheritance are modified and set aside by statutes regulating the effect of adoption only so far as there is some specific provision in the statutes for adoption inconsistent with the application, in such cases, of the general inheritance statutes. [Citing numerous cases.]"
Montana Adoption Statutes. R.C.M. 1947, sec. 61-134 reads: "Effect of adoption. A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation."
R.C.M. 1947, sec. 61-135 reads: "Effect on former relations of child. The parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the child so adopted, and have no right over it; provided that in cases where a parent of the child is either the husband or wife of the person adopting such child, such parent and such child shall continue to sustain towards each other the same legal relations as existed prior to such adoption."
There is nothing in either section 61-134, supra, or section 61-135, supra, or any other section of either the Codes or Constitution of Montana that says that, upon adoption, the lawfully begotten bodily issue of a person ceases to be the heir of its natural parent.
Respondents are clearly the surviving lawful issue of the decedent and their adoption by Stoltz had no influence whatever on their statutory right, as such surviving issue, to inherit the estate of their deceased natural father.
In Glanding v. Industrial Trust Co., 1946, 29 Del. Ch. 517, 46 A. (2d) 881, 888, the court said: "An adopted child upon its birth becomes the lawful issue of its natural parents, and continues to be so after its adoption. It is not and could not be made the `lawful issue' of its adopted parents by act of the legislature or by any other means."
We therefore hold that in this jurisdiction the adoption of a child does not destroy his status as one of the issue of his natural ancestors nor does an adopted child lose his right to inherit from his natural parent.
The courts of various states having the same or similar statutes to those of Montana above cited have held that an adopted *396 child may inherit from its natural parents. See: Wagner v. Varner, 1879, 50 Iowa 532; Humphries v. Davis, 1884, 100 Ind. 274, 50 Am. Rep. 788; Delano v. Bruerton, 1889, 148 Mass. 619, 20 N.E. 308, 2 L.R.A. 698; Patterson v. Browning, 1896, 146 Ind. 160, 44 N.E. 993; Burnes v. Burnes, C.C., 1904, 132 F. 485; Villier v. Watson's Adm'x, 1916, 168 Ky. 631, 182 S.W. 869, L.R.A. 1918A, 820; In re Klapp's Estate, 1917, 197 Mich. 615, 164 N.W. 381, L.R.A. 1918A, 818; Dreyer v. Schrick, 1919, 105 Kan. 495, 185 Pac. 30; In re Yates' Estate, 1921, 108 Kan. 721, 196 Pac. 1077; Roberts v. Roberts, 1924, 160 Minn. 140, 199 N.W. 581; Sledge v. Floyd, 1925, 139 Miss. 398, 104 So. 163; Sorenson v. Churchill, 1927, 51 S.D. 113, 212 N.W. 488; In re Roderick's Estate, 1930, 158 Wash. 377, 291 Pac. 325, 326, 80 A.L.R. 1398; In re Sauer's Estate, 1934, 216 Wis. 289, 257 N.W. 28; In re Wilson's Estate, 1934, 95 Colo. 159, 33 Pac. (2d) 969; In re Tilliski's Estate, 1945, 390 Ill. 273, 61 N.E. (2d) 24; In re Benner's Estate, 1946, 109 Utah 172, 166 Pac. (2d) 257, 258; Hendrich v. Anderson, 10 Cir., 1951, 191 F. (2d) 242.
The courts of California and certain other states have reached opposite results holding that after the adoption a child is no longer the heir of its natural parents. See: In re Newman's Estate, 1888, 75 Cal. 213, 16 Pac. 887, 7 Am. St. Rep. 146; In re Winchester's Estate, 1903, 140 Cal. 468, 74 Pac. 10; In re Jobson's Estate, 1912, 164 Cal. 312, 128 Pac. 938, 43 L.R.A., N.S., 1062; In re Darling's Estate, 1916, 173 Cal. 221, 159 Pac. 606; In re Estate of Hunsicker, 1923, 65 Cal. App. 114, 223 Pac. 411; In re Estate of Mercer, 1928, 205 Cal. 506, 271 Pac. 1067; In re Estate of Moore, 1935, 7 Cal. App. (2d) 722, 47 Pac. (2d) 533, 48 Pac. (2d) 28; In re Hebert's Estate, 1941, 42 Cal. App. (2d) 664, 109 Pac. (2d) 729; In re Hampton's Estate, 1943, 55 Cal. App. (2d) 543, 131 Pac. (2d) 565; In re Esposito's Estate, 1943, 57 Cal. App. (2d) 859, 135 Pac. (2d) 167.
The appellants herein cite and rely upon the above California decisions contending that the adoption statutes of this state were adopted from California and that such statutes should receive the same interpretation here as they were given in California.
First. We have already indicated that in our view the adoption statutes of this state have nothing whatever to do with the statutory right of respondents, as the bodily issue born in lawful wedlock to decedent and his then wife, to inherit decedent's estate under the express provisions of section 91-403, subd. 1, supra.
Second. A number of the California decisions upon which appellants rely have been carefully considered by various other high courts,  "weighed in the balances and * * * found wanting." See: Roberts v. Roberts, 1924, 160 Minn. 140, 199 N.W. 581; Sledge v. Floyd, 1925, 139 Miss. 398, 104 So. 163; Sorenson v. Churchill, 1927, 51 S.D. 113, 212 N.W. 488; In re Roderick's Estate, 1930, 158 Wash. 377, 291 Pac. 325, 80 A.L.R. 1398; In re Tilliski's Estate, 1945, 390 Ill. 273, 61 N.E. (2d) 24; In re Benner's Estate, 1946, 109 Utah 172, 166 Pac. (2d) 257, 258.
Third. This court will not blindly follow the construction given a particular statute by the court of a state from which we may or may not have borrowed it when the decision does not appear to us as founded on right reasoning. Oleson v. Wilson, 20 Mont. 544, 548, 52 Pac. 372, 63 Am. St. Rep. 639; Kujich v. Lillie, 127 Mont. 125, 1953, 260 Pac. (2d) 383.
Fourth. This court is not favorably impressed with the construction of the adoption statutes in the above cited California decisions.
Fifth. In our opinion the decisions which we have cited from other jurisdictions which, under statutes identical with or similar to our governing statutes, have held that an adopted child may inherit from its natural parents are founded on much better reasoning than the decisions cited and relied upon by the appellants herein.
The trial court reached the correct result and its order and decree are affirmed.
BOTTOMLY, FREEBOURN, ANGSTMAN and ANDERSON, JJ., concur. concur.