(744 P.2d 139)

No. 59,273

MICHAEL D. WILSON, AS ADMINISTRATOR OF THE ESTATES OF VIRGINIA GIVENS AND BABY BOY GIVENS, *et al.*, *Appellees*, v. KANSAS GAS AND ELECTRIC COMPANY, A CORPORATION, AND GARY DALE PAXSON, *Appellants*.

Opinion filed October 8, 1987.

*Kimberly Gee Vines, Michael A. Rump*, and *Ralph B. Foster*, of Wichita, for the appellant Kansas Gas and Electric Company.

*Nicholas S. Daily* and *Jeffery A. Jordan*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellant Gary Dale Paxson.

*Jay G. Horvath*, of Law Office of Jay G. Horvath, of Wichita, guardian ad litem, for the appellees.

Before ABBOTT, C.J., WILLIAM RANDOLPH CARPENTER, District Judge, assigned, and JAMES W. PADDOCK, District Judge, assigned.

CARPENTER, J.: Defendants Gary Dale Paxson and Kansas Gas and Electric Company (KG&E) appeal a damage award entered in a wrongful death and survival action maintained on behalf of seven children who sought recovery for the death of their mother and her unborn child.

On November 3, 1982, an automobile driven by defendant Paxson struck Virginia Givens as she was crossing Harry Street near its intersection with Pinecrest in Wichita. She did not survive the accident. Virginia Givens was pregnant, and the child she was carrying was stillborn.

Defendant Paxson had neglected to turn on his headlights after leaving a well-lighted parking lot. When he arrived at a section of Harry Street where some street lights were out, he realized his headlights were not on, and was reaching to turn them on when he hit Givens.

Givens had seven children in addition to her unborn child, but her parental rights to such children had been severed several years before the accident.

The administrator of the estates of Virginia Givens and Baby Boy Givens filed suit against Paxson, KG&E, and the City of Wichita, alleging that Paxson had been negligent in driving his car without his headlights on, and that KG&E and the City of Wichita were negligent in failing to maintain the street lights at the scene of the accident.

Eddie Ward intervened in the action, claiming to be the common-law husband of Virginia Givens and the father of Baby Boy Givens. The seven surviving children of Virginia Givens also intervened through a guardian ad litem.

A jury trial was held in September 1985. Plaintiffs moved to dismiss the City of Wichita from the lawsuit, which motion was granted by the court. The trial court ruled as a matter of law that Baby Boy Givens did not suffer conscious pain and suffering. The jury found that Virginia Givens was killed instantly and also determined that Eddie Ward was neither the common-law husband of Virginia Givens nor the father of Baby Boy Givens. The jury found KG&E 37% at fault, Paxson 37% at fault, and Givens 26% at fault and awarded $25,000 in nonpecuniary damages to the seven surviving children as the heirs of Virginia Givens, and $25,000 in nonpecuniary damages to the seven children as heirs of Baby Boy Givens. After assessing Givens' 26% fault, this resulted in judgments against KG&E of $9,250 in favor of the seven children as heirs of Virginia Givens, and $9,250 in favor of the seven children as heirs of Baby Boy Givens; and against Gary Dale Paxson of $9,250 in favor of the seven children as heirs of

Virginia Givens, and $9,250 in favor of the seven children as heirs of Baby Boy Givens.

When plaintiffs rested, KG&E moved for directed verdict on the issue of liability, premised upon the failure to prove any legal duty of KG&E to maintain street lights within the City of Wichita, since plaintiffs had not offered the existing street lighting agreement between KG&E and the City of Wichita in their case in chief. This motion was denied by the court, and KG&E elected to present evidence in its case in chief. In its case, KG&E called its Wichita Regional Manager to testify. During his testimony, plaintiffs first offered the street lighting agreement, which was admitted. At the conclusion of all the evidence, KG&E renewed its motion for directed verdict, which was again denied.

On appeal, KG&E·asserts that the trial court erred in denying its motion for directed verdict when plaintiffs failed to present evidence in their case establishing the legal duty of KG&E to maintain street lights in the City of Wichita. However, the rule in this jurisdiction is that a party waives his right to a directed verdict if such motion is made at the close of his opponent's case and thereafter he introduces evidence in his own behalf. He may renew his motion at the close of all the evidence, but such renewed motion will be judged in the light of the case as it stands at that time, even though the court may have erred in denying the initial motion. This error is cured if subsequent evidence introduced during the moving party's case in chief repairs the defects of his opponent's case. *Abston v. Medora Grain, Inc.*, 206 Kan. 727, 730, 482 P.2d 692 (1971).

KG&E argues that, in order to establish a legal duty to maintain street lights, it would have been necessary for the street lighting agreement between the City and KG&E to be admitted into evidence. However, such omission in plaintiffs' case was cured when the agreement was admitted without objection during the testimony of KG&E's Wichita Regional Manager who was called as a witness by KG&E. Accordingly, when KG&E elected to present evidence in its case in chief, it waived any claim of error by the trial court in denying its motion for directed verdict at the close of plaintiffs' case.

KG&E also contends that the trial court erred in allowing the issue of its negligence to go to the jury for the reason that there

was no evidence introduced which would establish that it departed from the proper standard of care, *i.e.*, that care which would be exercised by prudent persons engaged in the industry. *Mastin v. Kansas Power & Light Co.*, 10 Kan. App. 2d 620, 622-23, 706 P.2d 476 (1985). We note in passing that, in our scrutiny of the record, we find no objection on this specific ground by KG&E to the instruction on negligence given by the trial court.

Although KG&E moved for directed verdict on the issue of negligence, it would seem that KG&E did not fully articulate the sufficiency of evidence issue in the context of the standard in *Mastin*. We agree that this is the proper standard. Nevertheless, the record contains the testimony of KG&E's Wichita Regional Manager, Don Elliott, who stated that it was KG&E's policy to give widespread street lighting outages priority over individual lights. He also testified that KG&E was aware that the street lights were out early Monday morning preceding the Wednesday night accident, and that the lights were repaired the first time on that Monday. He further testified that KG&E was notified on Tuesday evening that the lights were out again and that a crew was dispatched on Wednesday to repair the lights, but that the repairs were not completed. The accident occurred Wednesday night, November 3, 1982. Elliott was unable to explain why the crew did not stay at the scene on Wednesday until the lights were fixed. The lights were not repaired until Thursday, November 4, 1982. There was also evidence that in excess of 70 street lights were off on both sides of Harry Street between Oliver and Woodlawn Streets, and that the accident scene was extremely dark.

We conclude, therefore, that there was sufficient evidence of KG&E's negligence for the submission of such issue to the jury.

Defendant Paxson moved for directed verdict on separate grounds that (1) the seven children of Virginia Givens cannot recover as collateral heirs for the wrongful death of Baby Boy Givens as a matter of law, and (2) there was insufficient evidence of any loss or damages suffered by the seven children as a result of the deaths of Virginia Givens and Baby Boy Givens.

K.S.A. 60-1902 provides that a wrongful death action may be

maintained by "any one of the heirs at law of the deceased who has sustained a *loss* by reason of the death." (Emphasis added.)

The parental rights of Virginia Givens to her seven surviving children were severed four-and-a-half years prior to the accident for conduct which constituted severe child abuse. The four youngest children, who had been adopted, did not appear at the trial. In the case of *In re Wheeler*, 3 Kan. App. 2d 701, 702, 601 P.2d 15, *rev. denied* 227 Kan. 927 (1979), the court stated:

"Where there is a termination of parental rights under the juvenile code [citation omitted], the sum total of the rights of the parent or parents in and to the child, as well as the rights of the child in and to the parents, are completely terminated; there is a complete and final divestment of all legal rights, privileges, duties and obligations of the parent and child with respect to each other."

In *Roelfs v. Wallingford, Inc.*, 207 Kan. 804, 811, 486 P.2d 1371 (1971), our Supreme Court held that deprivation of parental rights in a child under the juvenile code terminated the parental obligation of support, that within the meaning of the Workmen's Compensation Act a child was no longer a dependent of a worker whose parental rights had been terminated, and that such child was not entitled to workers' compensation benefits upon the worker's death.

An heir is defined as "[o]ne who inherits property, whether real or personal. A person who succeeds, by the rules of law, to an estate in lands, tenements, or hereditaments, upon the death of his ancestor, by descent and right of relationship." Black's Law Dictionary 651 (5th ed. 1979).

In view of the rule of *In re Wheeler*, we are forced to conclude that the seven surviving children of Virginia Givens were not her heirs at law and, therefore, not heirs at law of Baby Boy Givens as required by the wrongful death statute, K.S.A. 60-1902. Consequently, the children were not entitled to recover for the death of Baby Boy Givens.

Furthermore, we agree with defendant Paxson's contention that there was insufficient evidence of a loss sustained by the seven children because of the death of Virginia Givens or Baby Boy Givens, as required by the statute. The only evidence that any of the children had suffered a loss was elicited through the testimony of the oldest child, who testified that she was not even aware that Virginia Givens was pregnant or that the child was

stillborn until she read a newspaper clipping after Virginia Givens' death. She also testified that she was sad and felt a loss when her mother died and that she and her sisters were upset that Baby Boy Givens had not survived.

In *Hewitt v. Firestone Tire & Rubber Co.*, 490 F. Supp. 1358 (E.D. Va. 1980), the court held that the children of a deceased father, who had been separated from his children for eight years, were not entitled to any money in compensation for sorrow or mental anguish caused by their father's death, stating:

"The Court is unable to find that these children suffered grief upon the death of a man they could not remember having seen, a perfect stranger who had provided them neither moral nor material support despite an obligation to do both. Any emotional loss the children may have comprehended was fleeting and shallow." 490 F. Supp. at 1367.

The only reasonable conclusion to be drawn from the evidence is that there was no meaningful family relationship among these seven children, Virginia Givens, and Baby Boy Givens. We conclude, therefore, that the jury's award of nonpecuniary damages was not supported by sufficient evidence.

The judgment of the trial court is reversed.